KENNETH E. KELLER (SBN 71450) kkeller@kksrr.com
MICHAEL D. LISI (SBN 196974) mlisi@kksrr.com
ANJALI K. KURANI (SBN 227075) akurani@kksrr.com
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, California 94104-3839
Telephone:    (415) 249-8330
Facsimile:    (415) 249-8333

Attorneys for Plaintiff, Chanel, Inc.

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEL, INC., a New York corporation, | Case No. C-07-3592-EMC |
| Plaintiff, | **PLAINTIFF CHANEL, INC.'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST CASONDRA TSHIMANGA a/k/a CASONDRA SMITH a/k/a CASONDRA SATCHER a/k/a C. MAYFIELD a/k/a ANNE LLOYD** |
| v. | |
| CASONDRA TSHIMANGA a/k/a CASONDRA SMITH a/k/a CASONDRA SATCHER a/k/a C. MAYFIELD a/k/a ANNE LLOYD d/b/a HANDBAGOUTPOST.COM d/b/a DESIGNEROUTPOST.NET d/b/a HANDBAGSLUXURY.COM d/b/a BAY ELECTRONICS and Does 1-10, | **Magistrate Judge Edward M. Chen Courtroom C, 15th Floor** |
| Defendants. | |

**TABLE OF CONTENTS**

**PAGE(S)**

I.    INTRODUCTION ..................................................................................................... 5

II.   CHANEL IS ENTITLED TO JUDGMENT AGAINST DEFENDANT ................................... 5

    A.    Default Is Proper. ........................................................................................... 5

    B.    Chanel's Rights. ............................................................................................. 6

    C.    Defendant's Infringing Acts. ......................................................................... 8

III.  CHANEL IS ENTITLED TO THE RELIEF REQUESTED .................................................. 9

    A.    A Permanent Injunction Should Be Entered. ............................................... 10

    B.    Chanel is Entitled to an Award of Statutory Damages................................. 11

    C.    Chanel is Entitled to Enhanced Statutory Damages
        Based upon Defendant's Willful Counterfeiting......................................... 11

    D.    Chanel's Damages for Counts II and III...................................................... 17

    E.    Attorneys' Fees Should be Awarded............................................................ 17

    F.    Costs Should Be Awarded. .......................................................................... 19

IV.   CONCLUSION ..................................................................................................... 19

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,*
  944 F.2d 1446; 19 U.S.P.Q.2d 1491, 1499 (9th Cir. 1991) ........................... 12

*Aris Isotoner, Inc. v. Dong Jin Trading Co.,*
  17 U.S.P.Q.2d 1017 (S.D.N.Y. 1989) ...................................................... 11

*Brand v. NCC Corp.,*
  540 F. Supp. 562 (E.D. Pa. 1982) ......................................................... 11

*Chanel v. Doan,* slip op. No. C 05-03464 (N.D. Cal. March 13, 2007) .................... 8, 10, 17

*Fila U.S.A. v. RunRun Trading Co.,* No. 95-7144,
  1996 U.S. Dist. LEXIS 6893, at * 11 (S.D.N.Y. 1996) ................................. 17

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
  314 F.2d 149 (9th Cir. 1963), cert. denied, 374 U.S. 830 ............................... 12

*Harris v. Emus Records Corp.,*
  734 F.2d 1329 (9th Cir. 1984) ............................................................. 10

*H-D Michigan, Inc. v. Biker's Dream, Inc.,*
  48 U.S.P.Q.2d 1108 (C.D. Cal. 1998) .................................................... 11

*Intellstellar Starship Services, Ltd. v. Epix, Inc.,*
  184 F.3d 1107 (9th Cir. 1999), cert. denied,
  528 U.S. 1155, 120 S.Ct. 1161, 145 L. Ed.2d 1073 (2000) ........................... 12

*Louis Vuitton S.A., v. Downtown Luggage Center,*
  706 F. Supp. 839, 842 (S.D. Fla. 1988) .................................................. 17

*Maier Brewing Co. v. Fleischmann Distilling Corp.,*
  390 F.2d 117 (9th Cir. 1968) ............................................................. 10

*Malaytex USA Inc. v. Colonial Surgical Supply Inc.,*
  44 U.S.P.Q.2D (BNA) 1291 (N.D. Cal. 1997) ......................................... 9

*Metro Pub., Ltd. v. San Jose Mercury News,*
  987 F.2d 637 (9th Cir. 1993) ............................................................. 9

ii

*New York Racing Ass'n v. Stroup News Agency Corp.*,
   920 F. Supp. 295 (N.D.N.Y. 1996) ............................................................................. 11

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993)......................................................................................... 12

*Peer Int'l. v. Pausa Records*,
   909 F.2d 1332 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991) ............................... 11

*Pepsico, Inc. v. Triunfo-Mex, Inc.*,
   189 F.R.D. 431 (C.D. Cal. 1999) ................................................................................. 16

*Phillip Morris U.S.A. Inc. v. Castworld Prods. Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) ................................................................................... 8

*Phillip Morris USA, Inc. v. Liu*,
   489 F.Supp.2d 1119, (C.D. Cal. 2007)......................................................................... 15

*Rodeo Collection, Ltd. v. West Seventh*,
   812 F.2d 1215 (9th Cir. 1987)....................................................................................... 9

*Sara Lee Corp. v. Bags of New York, Inc.*,
   36 F. Supp. 2d 161 (S.D.N.Y. 1999)................................................................... 8, 10, 16

*Televideo Systems, Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987)......................................................................................... 8

*Transgo, Inc. v. AJAC Transmission Parts Inc.*,
   768 F.2d 1001 (9th Cir. 1985), cert. denied,
   474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778.......................................................... 12

**Statutes**

15 U.S.C. § 1116................................................................................................................. 9

15 U.S.C. § 1117(a)................................................................................................. 4, 15, 16

15 U.S.C. § 1117(c)................................................................................................. 4, 10, 15

15 U.S.C. § 1117(c)(2) ................................................................................................ 10, 15

15 U.S.C. § 1121 ............................................................................................................... 4

15 U.S.C. § 1125(c) (1) ..................................................................................................... 6

28 U.S.C. § 1117(b) ......................................................................................................... 15

iii

28 U.S.C. § 1330 ..................................................................................................................... 4

28 U.S.C. § 1331 ..................................................................................................................... 4

28 U.S.C. § 1338(a) ................................................................................................................ 4

28 U.S.C. § 1391 ..................................................................................................................... 4

Federal Rules of Civil Procedure 55 ...................................................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

## I.     INTRODUCTION

Plaintiff Chanel, Inc., a New York corporation ("Chanel") hereby moves for Entry of Final Default Judgment against Defendant Casondra Tshimanga a/k/a Casondra Smith a/k/a Casondra Satcher a/k/a C. Mayfield a/k/a Anne Lloyd d/b/a HandbagOutpost.com d/b/a DesignerOutpost.net d/b/a Handbagsluxery.com d/b/a Bay Electronics ("Tshimanga" or "Defendant").  The Court may set a hearing on this Motion at its convenience.  Defendant has been duly noticed of the hearing (at the address provided) and the filing of this Motion.

Chanel prays that such judgment include, inter alia, (1) injunctive relief against future infringement of Chanel's intellectual property rights; (2) statutory damages for trademark counterfeiting; (3) attorney's fees; and (4) costs of suit.  The Defendant is in default, and the prerequisites for a default judgment have been met.  Accordingly, Chanel is entitled to entry of a permanent injunction against the Defendant to prevent further violations of Chanel's trademark rights as set forth below.  Moreover, because the Defendant is in default, she has denied Chanel access to evidence necessary to establish the amount of actual damages or the amount of her profits.  This Court, however, is empowered to award statutory damages to Chanel for the Defendant's willful counterfeiting within the $500.00 to $1,000,000.00 range pursuant to 15 U.S.C. § 1117(c).  Finally, Chanel should recover its attorney and investigative fees pursuant to 15 U.S.C. § 1117(a).  An award of such fees is appropriate because the Defendant engaged in her counterfeiting activities willfully and maliciously, and in order to stop the Defendant's counterfeiting activity, Chanel was required to engage investigators and counsel to commence this legal action against the Defendant.

## II.     CHANEL IS ENTITLED TO JUDGMENT AGAINST DEFENDANT

### A.     Default Is Proper.

This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338(a).  Venue in this Judicial District is proper under 28 U.S.C. § 1391 as the underlying wrongful activities involved in this case occurred in this Judicial District.

This action was initiated against the Defendant by Chanel on July 11, 2007, through the filing

5

of a Complaint for federal trademark counterfeiting and infringement (Count I), federal false designation of origin (Count II), and federal trademark dilution (Count III). *See* Docket Number 1. The Defendant was served with copies of the Summons and the Complaint on October 27, 2007 by personal service. *See* Declaration of Kenneth E. Keller ("Keller Decl.") ¶ 3 attached hereto as Exhibit "A." Accordingly, the Defendant was required to answer the Complaint on or before November 16, 2007. *See id* ¶ 4. As of the date of this Motion, Chanel has not received an Answer from the Defendant, nor has any extension of time in which to answer or otherwise respond to the Complaint been granted. *See id*. ¶ 6. To Chanel's knowledge, Tshimanga is not in the military and is neither an infant, nor an incompetent. *See id*. ¶ 5; Declaration of Jason Holmes attached hereto as Exhibit "B" ¶ 4. On December 19, 2007, Chanel filed its Motion for Entry of Default against the Defendant. *See* Docket No 9.

Chanel now moves the Court to enter default and grant final default judgment against the Defendant. The Complaint, Pleadings, and Declarations filed in support of this Motion clearly support a finding that the Defendant violated Chanel's rights under the Lanham Act. Accordingly, default judgment pursuant to FRC P 55 should be entered against the Defendant.

**B.      Chanel's Rights.**

Chanel is a corporate entity duly organized and existing under the laws of the State of New York, with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019. *See* Declaration of Adrienne Hahn Sisbarro ("Hahn Decl.") ¶ 1 attached hereto as Exhibit "C." Chanel designs and markets a wide range of luxury goods including handbags, wallets, travel bags, luggage, credit card and business card cases, make-up bags and vanity cases sold empty, briefcase type portfolios, attaché cases, change purses, suitcases, tote bags, garment bags, travelers' shoe bags, scarves, and other goods which are sold throughout the United States and worldwide. *See* Hahn Decl. ¶¶ 5-6.

Chanel is, and at all times relevant hereto has been, the owner of the following federally registered trademarks:

6

| MARK | REG. NO. | REG. DATE |
|------|----------|-----------|
| CC MONOGRAM | 1,734,822 | November 24, 1992 |
| CC MONOGRAM | 1,314,511 | January 15, 1985 |
| CC MONOGRAM | 3,025,934 | December 13, 2005 |
| CHANEL | 0,626,035 | May 1, 1956 |
| CHANEL | 1,347,677 | July 9, 1985 |
| CHANEL | 1,733,051 | November 17, 1992 |
| CC MONOGRAM | 3,022,708 | December 6, 2005 |
| CHANEL | 0,906,262 | January 19, 1971 |
| CC MONOGRAM | 1,501,898 | August 30, 1988 |

which are registered in International Classes 18 and 25 and are used in connection with manufacture and distribution of, among other things, women's handbags, leather goods namely, wallets, travel bags, luggage, credit card and business card cases, make-up bags and vanity cases sold empty, briefcase type portfolios, attaché cases, change purses, suitcases, tote bags, garment bags, travelers' shoe bags, and scarves (the "Chanel Marks"). *See* Hahn Decl. ¶ 5; see also true and correct copies of the Chanel Registrations at issue in this proceeding attached hereto as Composite Exhibit "D." Chanel regularly enforces its trademark rights and authorized that this action be brought in its name. *See* Hahn Decl. ¶ 7.

The Chanel Marks have never been assigned or licensed to the Defendant. *See* Hahn Decl. ¶ 9. The Chanel Marks are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned. *See* Hahn Decl. ¶ 8. Chanel has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Chanel Marks. *See* Hahn Decl. ¶¶ 6-7. As such, the Chanel Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c) (1).

Further, Chanel has extensively used, advertised, and promoted the Chanel Marks in the United States in association with handbags, wallets, scarves, and other goods and has carefully monitored and policed the use of the Chanel Marks. *See* Hahn Decl. ¶¶ 6-7. As a result of Chanel's

7

1  efforts, members of the consuming public readily identify merchandise bearing the Chanel Marks as

2  being high quality merchandise sponsored and approved by Chanel. *See* Hahn Decl. ¶¶ 7-8.

3  Accordingly, the Chanel Marks have achieved secondary meaning as identifiers of high quality

4  products, including handbags, wallets, and scarves. *See* Hahn Decl. ¶¶ 6-7.

5        **C.      Defendant's Infringing Acts.**

6        As alleged by Chanel, admitted by default, and established by the evidence submitted

7  therewith, Defendant Tshimanga, an individual, is the owner and operator of the Internet websites

8  HandbagOutpost.com, DesignerOutpost.net, and HandbagsLuxery.com and is the active, conscious,

9  and dominant force behind the sale of handbags, wallets, and scarves bearing counterfeits of the

10  Chanel Marks.

11        Further, as admitted by the Defendant through default, at all times relevant, the Defendant had

12  full knowledge of Chanel's ownership of the Chanel Marks, including its exclusive right to use and

13  license the trademarks and goodwill associated therewith. The Defendant does not have, nor has she

14  ever had, the right or authority to use the Chanel Marks for any purpose. *See* Hahn Decl. ¶ 9.

15  However, despite her known lack of authority to do so, the Defendant has been advertising, offering

16  for sale and selling at least handbags, wallets, and scarves bearing counterfeit marks which are

17  identical to the registered Chanel Marks via the Internet websites HandbagOutpost.com,

18  DesignerOutpost.net, and HandbagsLuxery.com. *See* Hahn Decl. ¶¶ 11-13; Declaration of Robert

19  Holmes ("Holmes Decl.") ¶¶ 4-9, 15 attached hereto as Exhibit "E;" Declaration of Lynnette Oka

20  ("Oka Decl.") ¶ 6 attached hereto as Exhibit "F."

21        Chanel's evidence demonstrates Defendant is engaged in the fraudulent promotion,

22  advertisement, distribution, and sale of counterfeit Chanel goods. That Defendant sold counterfeit

23  Chanel goods is confirmed by Defendant's admissions and Chanel's investigation of Defendant. In or

24  about May 2006, as part of its ongoing investigation regarding the sale of counterfeit Chanel

25  products, Chanel retained Robert Holmes of IPCyberCrime.com, LLC, formerly, the Holmes

26  Detective Agency, to investigate the sale of counterfeit products by Defendant. *See* Hahn Decl. ¶ 10;

27  8

28

Oka Decl. ¶ 5.  In or about May 2006, Investigator Holmes accessed the Internet website operating under the domain name HandbagOutpost.com and placed an order for the purchase of a handbag bearing the Chanel Marks at issue in this action for $557.43, including shipping.  *See* Holmes Decl. ¶ 5.  Payment was made via debit/credit card and the payee was identified as "BAY ELECTRONICS 510-938-8438 CA US."  *See* Holmes Decl. ¶ 6.  The payee telephone number is registered to Defendant.  *See* Holmes Decl. ¶ 15.  On June 20, 2006, Investigator Holmes received the handbag purchased from Defendant, which was shipped directly to his Ft. Lauderdale, Florida address via UPS.  *See* Holmes Decl. ¶ 7 and Composite Exhibit 2 attached thereto.  The handbag bearing the Chanel Marks purchased by Investigator Holmes in May 2006 from HandbagOutpost.com was turned over to representatives of Chanel in New York for evaluation, together with a chain of custody, a copy of the outer packaging, and a copy of the invoice.  *See* Hahn Decl. ¶ 10; Holmes Decl. ¶ 8 and Composite Exhibit "2" attached thereto; Oka Decl. ¶ 5.  The handbag Investigator Holmes purchased from Defendant was inspected by a representative of Chanel, Adrienne Hahn Sisbarro, who is familiar with Chanel's genuine goods and trained to detect counterfeits, and was determined to be non-genuine.  *See* Hahn Decl. ¶ 11; Holmes Decl. ¶ 8; Oka Decl. ¶ 6.

### III.    CHANEL IS ENTITLED TO THE RELIEF REQUESTED

Upon entry of default, the well-pled factual allegations of Plaintiff's Complaint (other than those related to damages) will be taken as true.  *Phillip Morris U.S.A. Inc. v. Castworld Prods. Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)).  The Defendant is deemed to have admitted, upon default, all well-pled allegations in the Complaint.  *Id.*  As such, the Defendant's failure to respond to the allegations of the Complaint in this action establishes her liability under each of the claims asserted in the Complaint. *Id.*  The issuance of a permanent injunction, an award of monetary damages, and the recovery of attorney's fees and costs are the proper subjects of a default judgment for violations of the Lanham Act.  *Chanel v. Doan*, slip op. No. C 05-03464 at 1 (N.D. Cal. March 13, 2007); *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 162 (S.D.N.Y. 1999).

1

### A.     A Permanent Injunction Should Be Entered.

Since injunctive and other equitable relief may be granted in accordance with the principles of equity to prevent violations of trademark laws, 15 U.S.C. § 1116, this Court should permanently enjoin the Defendant from infringing any of Chanel's intellectual property rights, including the Chanel Marks.  The risk of continuing infringement is likely, owing to strong consumer demand for Chanel's products.  *See* Hahn Decl. ¶ 6.  Granting a broad permanent injunction is therefore warranted.

The Defendant's goods are of a different quality to Chanel's genuine goods. *See* Hahn Decl. ¶ 13.  As such, Chanel will continue to suffer irreparable injury to its reputation and goodwill for as long as the Defendant is allowed to continue her counterfeiting and infringing activities.  *See* Hahn Decl. ¶ 14.  An award of money damages alone will not cure the injury to Chanel's reputation as a result of the Defendant's infringing actions.  Further, a likelihood of confusion exists herein since the Defendant is engaged in counterfeiting activities using spurious designations which are substantially indistinguishable from Plaintiff's actual Chanel Marks.  As the Ninth Circuit has expressed it: "[O]nce the Plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the Plaintiff will suffer irreparable harm if injunctive relief does not issue." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987).  Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where the Plaintiff has demonstrated that it will lose control of its reputation as a result of the Defendant's activities.  *See Malaytex USA Inc. v. Colonial Surgical Supply Inc.*, 44 U.S.P.Q.2D (BNA) 1291, 1295 (N.D. Cal. 1997)  ("[O]nce the plaintiff has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.  In the instant case, the plaintiff will suffer irreparable injury in the form of loss of valuable goodwill and reputation"); *see also Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993).

In this action, the Defendant's continuing complete disregard for Chanel's rights and her

10

failure to respond to this litigation likewise warrant the issuance of a broad permanent injunction against infringement of any of Chanel's intellectual property rights, including those at issue in this case.

### B.     Chanel is Entitled to an Award of Statutory Damages.

As alleged in the Complaint (and admitted by the Defendant's failure to respond to the Complaint) and confirmed in the Declarations filed in this action, the handbags, wallets, and scarves imported, distributed, advertised, sold and/or offered for sale by the Defendant bore counterfeits of the Chanel Marks. *See* Hahn Decl. ¶ 11; Holmes Decl. ¶ 8; Oka Decl. ¶ 6. In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $500.00 nor more than $100,000.00 per counterfeit mark per type of goods. In addition, if the Court finds a defendant's counterfeiting actions were willful, then it may impose damages above the maximum limit up to $1,000,000.00 per mark per type of goods. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Chanel elects to recover an award of statutory damages as to Count I of the Complaint.

### C.     Chanel is Entitled to Enhanced Statutory Damages Based upon Defendant's Willful Counterfeiting.

The Court has wide discretion to set an amount of statutory damages. *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968), *cert. denied* 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879, 157 U.S.P.Q. 720 (1968). "To calculate statutory damages under the Lanham Act, many district courts turn to the analysis developed for a similar provision within the Copyright Act." *Chanel v. Doan*, slip op. No. C 05-03464 at 5; *see also Sara Lee Corp.*, 36 F. Supp.2d at 166-67 (collecting cases, analogizing the Copyright Act statutory damages, and describing the breadth of court discretion in awarding statutory damages under the Lanham Act); *see also Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (concluding that the court's discretion in setting the amount of copyright statutory damages is "wide," constrained only by the specified maxima and

11

minima."); *Peer Int'l. v. Pausa Records*, 909 F.2d 1332, 1336-37 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991) (upholding award of maximum statutory damages where copyright infringement was willful).  Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain.  *See* e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.)

In most cases, the only way for plaintiff to find out what the infringer's gross sales have been is from the infringer itself in discovery. Any doubts about the actual amount of gross sales or profits will be resolved against the infringing party.  *H-D Michigan, Inc. v. Biker's Dream, Inc.*, 48 U.S.P.Q.2d 1108, 1115 (C.D. Cal. 1998) (where infringer's cost data is "incomplete and contradictory," court refuses to guess and finds that infringer failed to prove any cost deductions); *see also Aris Isotoner, Inc. v. Dong Jin Trading Co*., 17 U.S.P.Q.2d 1017, 1022 (S.D.N.Y. 1989) (the infringer fails to provide satisfactory evidence of its actual sales volume, the court may rely on indirect or circumstantial evidence and extrapolate sales from that other evidence); *Brand v. NCC Corp.*, 540 F. Supp. 562, 565 (E.D. Pa. 1982) (defendant made no attempt to prove any cost deductions and "profits" were based upon gross sales revenues); *New York Racing Ass'n v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (when plaintiff proves gross sales and the infringer fails to prove cost deductions, "then the profits to which the plaintiff is entitled under the Lanham Act are equal to the infringer's gross sales").  This case is no exception.  Since the Defendant has refused to participate in this litigation and failed to provide any information on her profits or costs, Chanel has been deprived of the ability to obtain discovery from her and must calculate damages based on the direct and circumstantial evidence available.

The available evidence demonstrates the Defendant advertised, offered for sale, and/or sold at least three (3) types of products, handbags, wallets, and scarves bearing counterfeits of various Chanel Marks which are protected by nine (9) federal trademark registrations owned by Chanel.  *See* Composite Exhibit D; Hahn Decl. ¶ 11-12; Holmes Decl. ¶ 8 and Composite Exhibit "2" attached thereto; Oka Decl. ¶ 6.

12

---

PLAINTIFF CHANEL, INC.'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
Case No. C-07-3592-EMC

1    The Chanel Marks counterfeited are renowned worldwide as identifiers of high quality

2  merchandise.  *See* Hahn Decl. ¶ 7.  That Defendant sold goods using marks which are identical to

3  such strong marks shows her desire and purpose to trade upon Chanel's goodwill.  *Transgo, Inc. v.*

4  *AJAC Transmission Parts Inc*., 768 F.2d 1001, 1016 (9th Cir. 1985), cert. denied, 474 U.S. 1059, 106

5  S.Ct. 802, 88 L.Ed.2d 778; *Fleischmann Distilling Corp. v. Maier Brewing Co*., 314 F.2d 149, 158

6  (9th Cir. 1963), cert. denied, 374 U.S. 830.  "The Ninth Circuit has held that when an alleged

7  infringer knowingly adopts a Mark similar to another's, courts will presume an intent to deceive the

8  public."  *Official Airline Guides, Inc.  v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).  Indeed, in a case of

9  clear-cut copying such as this, it is appropriate to presume the Defendant intended to cause confusion

10  and benefit from the Plaintiff's reputation, to the detriment of the Plaintiff.  *Academy of Motion*

11  *Picture Arts & Sciences v. Creative House Promotions, Inc*., 944 F.2d 1446, 1456; 19 U.S.P.Q.2d

12  1491, 1499 (9th Cir. 1991); *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th

13  Cir. 1999), cert. denied, 528 U.S. 1155, 120 S.Ct. 1161, 145 L. Ed.2d 1073 (2000) ("Adopting a

14  designation with knowledge of its trademark status permits a presumption of intent to deceive. . . In

15  turn, intent to deceive is strong evidence of a likelihood of confusion.")  In this case, the presumption

16  of intent to deceive is confirmed by Defendant's representation that her goods are authentic, despite

17  being expressly informed by Chanel that her goods were counterfeit.  *See* Exhibit "G;" Oka Decl. ¶ 7.

18    The evidence establishes the Defendant is a willful counterfeiter who has no respect for

19  intellectual property laws or for Chanel's rights.  On or about November 13, 2006, Lynnette Oka sent

20  a cease and desist letter via electronic mail to Defendant on behalf of Chanel.  *See* Oka Decl. ¶ 7; see

21  also true and correct copies of the cease and desist letter sent by Chanel attached thereto as Composite

22  Exhibit "1."  On November 15, 2006, Ms. Oka sent an additional copy of Chanel's cease and desist

23  letter via certified mail to Defendant.  *See Id*.  The cease and desist letter, inter alia, advised

24  Defendant that the offering for sale and sale of products bearing counterfeits and infringements of the

25  Chanel Marks was illegal and demanded Defendant stop.  *See id*.  On or about November 13, 2006,

26  Ms. Oka received a response from Defendant, acknowledging receipt of the cease and desist letter and

27                                                13

asking Ms. Oka for a telephone number at which Defendant could contact her.  *See* Oka Decl. ¶ 8 and Composite Exhibit "2" attached thereto.  On April 18, 2007, Chanel discovered that Defendant was again selling handbags bearing counterfeits of the Chanel Marks on the Internet website DesignerOutpost.com.  *See* Exhibit "I."  The Defendant clearly intentionally copied the Chanel Marks for the purpose of deriving the benefit of Chanel's world-famous reputation.  In any event, the Defendant has defaulted on Chanel's allegations of willfulness.  As such, the Court should award a significant amount of statutory damages available under the Lanham Act to ensure that the Defendant does not continue her intentional and willful counterfeiting and infringing activities.

As noted above, the only available evidence demonstrates the Defendant distributed, advertised, offered for sale, and/or sold at least three (3) types of products, handbags, wallets, and scarves bearing counterfeits of various Chanel Marks which are protected by nine (9) federal trademark registrations owned by Chanel.  *See* Exhibits "G" through "K;" Hanh Decl. ¶ 11-12, Holmes Decl ¶ 4-9, 15.  As supported by the Pleadings, Motions, Declarations, and accompanying Exhibits filed in this action, Defendant uses three websites, "HandbagOutpost.com," "DesignerOutpost.net," and "HandbagsLuxery.com," to offer for sale and sell products bearing counterfeits and infringements of the Chanel Marks.

**HandbagOutpost.com**

Tshimanga's website HandbagOutpost.com as it appeared on May 3, 2006, reveals Tshimanga was offering for sale: nine (9) handbags bearing the Chanel Marks priced between $269.00 and $429.00; one wallet priced at $109.00; and two scarves both priced at $12.99, each bearing the Chanel Marks.  *See* Exhibit "G."

A review of Defendant's same website as it appeared on October 27, 2006, reveals Tshimanga was offering for sale twenty-eight (28) handbags bearing the Chanel Marks priced between $359.00 and $499.00.  *See* Exhibit "H."

A review of Defendant's same website as it appeared on April 18, 2007 reveals Tshimanga was offering for sale twenty-eight (28) handbags bearing the Chanel Marks priced between $599.00

14

and $1599.00 each and eight (8) wallets bearing the Chanel Marks priced at $199.00.  *See* Exhibit "I."

Without evidence provided by Tshimanga to the contrary, Chanel submits it is reasonable to infer from available evidence that during any given sales period Tshimanga may have earned as much as $15,427.00 in revenues through her sales of handbags, wallets, and scarves on the website HandbagOutpost.com .  Estimating Tshimanga turned her inventory only every eight weeks and conservatively allowing for only a profit of fifty percent (50%) from April 10, 2006, the date Tshimanga registered the domain name, until October 27, 2007, the date the Defendant was served, Tshimanga may have earned at least $77,135.00 in profits through the sale of counterfeit Chanel branded goods via the website HandbagOutpost.com.

**DesignerOutpost.net**

Tshimanga's website, DesignerOutpost.net as it appeared on July 11, 2006, reveals Tshimanga was offering for sale twenty-one (21) handbags bearing the Chanel Marks priced between $399.00 and $499.00.  *See* Exhibit "J."

Without evidence provided by Tshimanga to the contrary, Chanel submits it is reasonable to infer from available evidence that during any given sales period Tshimanga may have earned as much as $9,279.00 in revenues through her sales of handbags on the website DesignerOutpost.net. Estimating Tshimanga turned her inventory only every eight weeks and conservatively allowing for a profit of only fifty percent (50%) from June 1, 2006, the date Tshimanga registered the domain name, until October 27, 2007, the date Defendant was served, Tshimanga may have earned at least $42,335.44 in profits through the sale of counterfeit Chanel branded goods via the website DesignerOutpost.net

**HandsbagsLuxery.com**

Tshimanga's website, HandbagsLuxery.com as it appeared on January 9, 2007 reveals Tshimanga was offering for sale fifty-nine (59) handbags bearing the Chanel Marks priced between $599.00 and $899.00.  *See* Exhibit "K."

Without evidence provided by Tshimanga to the contrary, Chanel submits it is reasonable to

15

infer from available evidence that during any given sales period Tshimanga may have earned as much as $37,986.00 in revenues through her sales of handbags on the website HandbagsLuxery.com. Estimating Tshimanga turned her inventory only every eight weeks and conservatively allowing for only a profit of fifty percent (50%) from December 10, 2006, the date the domain name was registered, until October 27, 2007, the date Defendant was served, Tshimanga may have earned at least $106,835.62 in profits through the sale of counterfeit Chanel branded goods via the website HandbagsLuxery.com.

If the Court were awarding actual damages pursuant to 15 U.S.C. § 1117(a), Tshimanga's profits would be an appropriate measure. Moreover, any such award of profits pursuant to § 1117(a) would be subject to mandatory trebling pursuant to § 1117(b) since Tshimanga's conduct was intentional. Hence, a rough estimate of an actual trebled damage award is approximately $678,918.18. Chanel submits that an equivalent amount would constitute a reasonable statutory damage award pursuant to § 1117(c).

The requested damage amount equates to $25,145.12 per registered mark counterfeited (9) per type of goods (3). This amount is at the very low end of the range prescribed under 15 U.S.C. § 1117(c)(2) and is appropriate based on Tshimanga's extensive and willful counterfeiting of the Chanel Marks. The award should be sufficient to deter Tshimanga and others from continuing to counterfeit or otherwise infringe Chanel's trademarks, compensate Chanel, and punish Tshimanga, all stated goals of 15 U.S.C. § 1117(c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; *Phillip Morris USA, Inc. v. Liu*, 489 F.Supp.2d 1119, 1123-24, (C.D. Cal. 2007) (awarding plaintiff $1,000,000.00 per mark infringed "based on the need (1) to deter Defendant, and other counterfeiters, from violating Plaintiff's valid trademarks, (2) to compensate Plaintiff for the damage caused by Defendant's actions, and (3) to punish Defendant for his willful violation of Plaintiff's trademarks").

Chanel's request is reasonable in light of the number of items apparently being offered for sale and sold by Tshimanga. While Tshimanga has prevented Chanel from obtaining discovery, it is

16

1 reasonable to assume the number of units sold by Tshimanga, which were identified during the course

2 of Chanel's investigation, do not constitute the whole of Tshimanga's counterfeiting activities with

3 respect to the Chanel Marks.  Additionally, it is reasonable to infer Tshimanga operated a successful

4 counterfeiting operations based on the sheer number of items listed for sale by her and the fact that

5 Tshimanga has been operating her business since April 10, 2006 through at least three different

6 websites HandbagOutpost.com, DesignerOutpost.net, and HandsbagsLuxery.com.  *See* Exhibits "G"

7 through Exhibit "K."

8         Other courts have granted statutory damages under the Lanham Act at a level similar to or

9 greater than Chanel's requests herein.  *See*, e.g., *Chanel, Inc. v. Jatinder P Singh,* Case No. 2:05-cv-

10 04749-CAS-PJW (C.D. Cal 2005)(awarding $5,279,898.00); *Chanel, Inc. v. Hugo Rios*, Case No.

11 CV-03-273-RSWL(PJW) (C.D. Cal. 2003) (awarding $750,000); *Sara Lee Corp*., 36 F. Supp.2d at

12 170 (awarding $750,000.00); *Tommy Hilfiger Licensing, Inc. v. Goody  Family Clothing, Inc.*, No.

13 00-1934, 2003 U.S. Dist. LEXIS 8788, at *70 (N.D. Ga. 2003) (awarding $2,100,000.00).  Plaintiff's

14 request is reasonable.

15         **D.    Chanel's Damages for Counts II and III.**

16         In addition to federal trademark counterfeiting and infringement (Count I), Chanel's

17 Complaint also set forth causes of action for false designation of origin pursuant to § 43(a) of the

18 Lanham Act (15 U.S.C. § 1125(a)) (Count II) and federal trademark dilution (Count III).  As to

19 Counts II and III the allowed scope of monetary damages mirrors that encompassed in 15 U.S.C. §

20 1117.  Obviously, Chanel is not entitled to double recovery on its claims, so judgment on Counts II

21 and III should be limited to entry of the requested permanent injunction.

22         **E.    Attorneys' Fees Should be Awarded.**

23         Chanel is entitled to recovery of reasonable attorneys' fees incurred pursuant to 15 U.S.C. §

24 1117(a).  *Pepsico, Inc. v. Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal. 1999)  ("Section 1117(a)

25 also allows for an award of attorneys' fees in connection with Lanham Act violations provided that

26 exceptional circumstances are present.  Exceptional circumstances exist in this matter due to

27                                            17

28
_____

1    defendant's deliberate and willful conduct").

2         Chanel's counsel spent approximately 46.40 (13.5+32.90) hours of time in this case in

3    connection with investigative oversight and litigation.  *See* Keller Decl. ¶ 9; Declaration of Stephen

4    M. Gaffigan ("Gaffigan Decl.") ¶ 4 attached hereto as Exhibit "L."  All attorney time in this matter

5    relates to the gathering of information, the preparation of documents and pleadings, and other

6    litigation related expenses.  *See* Gaffigan Decl. ¶ 6; Keller Decl. ¶ 12.  Chanel's counsel charged the

7    rates of rates between $350 and 500.00 per hour for their services.  *See* Gaffigan Decl. ¶ 7; Keller

8    Decl. ¶ 10.  These rates are either equal to or less than the prevailing market rates for comparable

9    services in California, where this action was filed.  *See id.*  Attorneys' fees incurred in this matter

10   total $16,495.00 ($4,725.00 + $11,770.00).  *See* Gaffigan Decl. ¶ 4; Keller Decl. ¶ 9.  Chanel's

11   counsel made every reasonable effort to minimize hours spent on the case, and the fee requested is

12   equal to or below the amount spent on similar past cases.  *See* Gaffigan Decl. ¶ 6; Keller Decl. ¶ 12.

13   The fee is also reasonable in light of the extent of the Defendant's conduct.  Moreover, the fee is

14   reasonable in light of the fact that the legal services in this case were performed by experienced

15   intellectual property litigators.  *See* Gaffigan Decl. ¶ 2; Keller Decl. ¶ 7.

16        As part of an attorneys' fees award, Plaintiff may also recover reasonable investigative fees, as

17   long as the investigator acted under the direction of an attorney.  *See Chanel v. Doan*, slip op. No. C

18   05-03464 at 19-20; *Fila U.S.A. v. RunRun Trading Co.*, No. 95-7144, 1996 U.S. Dist. LEXIS 6893, at

19   * 11 (S.D.N.Y. 1996); *Louis Vuitton S.A., v. Downtown Luggage Center*, 706 F. Supp. 839, 842 (S.D.

20   Fla. 1988); *see* also the Joint Statement on Trademark Counterfeiting Legislation, which expressly

21   provides that to the extent that an investigator acts under the direction of an attorney, his or her fees

22   may be recovered by a prevailing plaintiff as part of an award of attorney's fees. 130 CONG. REC.

23   H12083 (October 10, 1984).  Chanel requests the Court award incurred investigative charges in the

24   total amount of $2,556.43 which were necessary to uncover information regarding the Defendant's

25   illicit activities. *See* Holmes Decl. ¶ 16.

26

27                                          18

28   PLAINTIFF CHANEL, INC.'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
     Case No. C-07-3592-EMC

**F.    Costs Should Be Awarded.**

Chanel also requests that this Court award costs in the total amount of $500.00. *See* Gaffigan Decl. ¶¶ 8-11. These costs consist of the following:

| | |
|---|---|
| Filing Fee: | $ 350.00 |
| Process Server Fee for Tshimanga.: | $ 150.00 |

## IV.    CONCLUSION

For the foregoing reasons, Chanel respectfully requests that the Court:

(1)    Enter Final Default Judgment finding Defendant Casondra Tshimanga a/k/a Casondra Smith a/k/a Casondra Satcher a/k/a C. Mayfield a/k/a Anne Lloyd d/b/a HandbagOutpost.com d/b/a DesignerOutpost.com d/b/a Handbagsluxery.com d/b/a Bay Electronics liable on all Counts of the Complaint;

(2)    Enter a permanent injunction against Tshimanga;

(3)    Award Chanel $678,558.18 in statutory damages against Tshimanga, pursuant to 15 U.S.C. § 1117(c);

(4)    Award Chanel $16,495.00 in reasonable attorney's fees against Tshimanga, pursuant to 15 U.S.C. § 1117(a);

(5)    Award Chanel $2,556.43 in reasonable investigative fees against Tshimanga, pursuant to 15 U.S.C. § 1117(a); and

(6)    Award Chanel costs in the amount of $500.00 against Tshimanga, pursuant to 15 U.S.C. § 1117(a).

Dated: March 14, 2008                    KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP


By: _____/s/_____
KENNETH KELLER
Attorneys for Plaintiff CHANEL, INC.


19