1  KENNETH E. KELLER (SBN 71450) kkeller@kksrr.com
   MICHAEL D. LISI ( SBN 196974) mlisi@kksrr.com
2  ANJALI KURANI (SBN 227075) akurani@kksrr.com
3  KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
   114 Sansome Street, Suite 400
4  San Francisco, CA  94104-3839
   Telephone:     (415) 249-8330
5  Facsimile:     (415) 249-8333

6  Attorneys for Plaintiff, CHANEL, INC.

7

8

9              THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
   CHANEL, INC., a New York corporation,        )  Case No. C-07-3592-EMC
12                                               )
                Plaintiff,                       )
13                                               )
         v.                                      )  **PLAINTIFF'S SUPPLEMENTAL**
14                                               )  **BRIEF IN SUPPORT OF  MOTION**
                                                 )  **FOR FINAL DEFAULT JUDGMENT**
15 CASONDRA TSHIMANGA a/k/a CASONDRA             )
   SMITH a/k/a CASONDRA SATCHER a/k/a C.         )
16 MAYFIELD a/k/a ANNE LLOYD d/b/a               )
   HANDBAGOUTPOST.COM d/b/a                      )
17 DESIGNEROUTPOST.NET d/b/a                     )
   HANDBAGSLUXERY.COM d/b/a BAY                  )
18 ELECTRONICS and Does 1-10,                    )
                                                 )
19                                               )
                                                 )
20              Defendants.                      )
                                                 )
21
         Plaintiff Chanel, Inc. ("Chanel"), pursuant to this Court's April 3, 2008 Order, hereby files it

22 supplemental brief and evidence in support of Chanel's Motion for Final Default Judgment and

23 states as follows:

24                    I.    **INTRODUCTION**

25      Chanel filed its Motion for Final Default Judgment ("Chanel's Motion") against Defendant

26 Casondra Tshimanga a/k/a Casondra Smith a/k/a Casondra Satcher a/k/a C. Mayfield a/k/a Anne

27 Lloyd d/b/a HandbagOutpost.com d/b/a DesignerOutpost.net d/b/a Handbagsluxery.com d/b/a Bay

28                                               1

Electronics ("Tshimanga" or "Defendant") on March 14, 2008 (e-Docket No. 18). Upon consideration of Chanel's Motion, the Court issued an Order requiring Chanel to provide supplemental briefing and evidence with respect to (1) Ms. Tshimanga's relationship with the business operating under the domain name HandbagsLuxery.com; (2) whether the Court should either lower the per mark award or deem some of the Chanel Marks at issue as one singular mark (*e.g.*, the black CC MONOGRAM and the word CHANEL); and (3) how Chanel calculated its requested damage award, including the basis for Chanel's suggestion that Ms. Tshimanga may have turned her inventory every eight weeks and earned a profit of approximately fifty percent (50%). Chanel's responses to those three areas of inquiry are set forth in order below.

## II.    ARGUMENT

### A.    The Defendant does business as HandbagsLuxery.com.

The Court has expressed concern about whether Defendant Tshimanga actually does business as HandbagsLuxery.com, and whether it would be appropriate to enter an injunction prohibiting HandbagsLuxery.com from specified conduct if it was, in fact, a separate entity from Tshimanga and therefore never served with the Summons and Complaint. Attached hereto as Exhibit "A" is the Second Declaration of Robert Holmes in Support of Chanel's Supplemental Brief in Support of Motion for Final Default Judgment (the "Second Declaration of Holmes"), Chanel's private investigator. The Second Declaration of Holmes details Chanel's evidence regarding Tshimanga's relationship to HandbagsLuxery.com, HandbagOutpost.com and DesignerOutpost.net.

Specifically, as part of his overall investigation, Holmes established a solid trail of forensic email data which ties together the domain names DesignerOutpost.net, HandbagOutpost.com and HandbagsLuxery.com and demonstrates Defendant Tshimanga's relationship to each. In particular, through email correspondence dated October 3, 2006, Holmes was able to confirm that emails he sent to "info@DesignerOutpost.net" and "sales@HandbagOutpost.com" were read on the same computer with a Comcast Cable IP address in the Hayward, California area. *See* Second Declaration of Holmes at ¶ 4 and Composite Exhibit 1 attached thereto. On that same date, the domain Registrant for both HandbagOutpost.com and DesignerOutpost.net was listed as "Casondra

2

1   Tshimanga" with anonymous contact details.[1]  *Id.* at ¶ 5 and Exhibit 2 attached thereto.

2          Later the same month, on October 25, 2006, Holmes sent a second email to

3   "info@DesignerOutpost.net" which was also read on a computer with a Comcast Cable IP address

4   located in the Hayward, California area.  *Id.* at ¶6 and Exhibit "3" attached thereto.   At the time of

5   his second email to "info@DesignerOutpost.net," the domain Registrant for DesignerOutpost.net

6   had been changed to Kelly Watson with anonymous contact details.  *Id.* at ¶ 7 and Exhibit 4

7   attached thereto.  One year later in October, 2007, the domain Registrant of DesignerOutpost.net

8   had been changed again to Handbag Outpost.  *See* Second Declaration of Holmes ¶ 8 and Exhibit ¶

9   5 attached thereto.

10         Similarly, on January 9, 2007, the website HandbagsLuxery.com identified Kelly Watson

11  with anonymous contact details as the domain Registrant, and one year later, on January 5, 2008, the

12  domain Registrant of HandbagsLuxery.com was changed to Handbag Outpost -- Tshimanga's

13  proven alias.  *See* Second Declaration of Holmes ¶¶ 9 and 10 and Exhibits 5 and 6 attached thereto.

14  Additionally, Holmes conducted a search using Acxiom.com, a public records search engine, and

15  was unable to locate any real person in the United States or elsewhere with the name of Kelly

16  Watson who was in anyway associated with the domain names DesignerOutpost.net,

17  HandbagsLuxery.com and/or HandbagOutpost.com.

18         In view of the foregoing and its previously submitted evidence, Chanel contends it has

19  proven Tshimanga is the individual conducting business via HandbagOutpost.com,

20  DesignerOutpost.net and HandbagsLuxery.com.  Hence, it is fair to enter an injunction prohibiting

21  Tshimanga from continuing her counterfeiting activities via all three websites and to assess

22  damages against her for her counterfeiting activities through those websites.

23  ─────────────────────

24  [1]  Holmes had previously conducted WHOIS searches regarding the domain names
    HandbagsOutpost.com DesignerOutpost.net on May 3, 2006 and July 11, 2006, respectively.  At

25  that time, the domain Registrants, Administrative Contacts and Technical Contacts for
    HandbagsOutpost.com and DesignerOutpost.com were Casondra Tshimanga.  *See* Declaration of

26  Robert Holmes in Support of Chanel's Motion for Final Default Judgment (attached as Exhibit E)
    together with true and correct copies of the WHOIS records attached thereto as Exhibits 1 and 3,

27  respectively.

28                                    3

B.     **Statutory Damages Under 15 U.S.C. §1117(c).**

1.     **Number of Marks Counterfeited.**

Pursuant to 15 U.S.C. §1117(c), Chanel is seeking an award of statutory damages for Tshimanga's counterfeiting of each of Chanel Registered Marks identified Paragraph 7 of the Complaint.   Chanel concedes that two of its CC MONOGRAM Registrations (Reg. No. 1,734,822 and Reg. No. 1,314,511) cover the same marks for similar goods.[2]   Similarly, Reg. Nos. 0,626,035, 1,347,677 and 1,733,051 for the CHANEL word Mark are overlapping.  However, each Registration is valid and stands separately on the Principal Register of the United States Patent and Trademark Office (the "USPTO").   In Chanel's view, each use of a counterfeit mark by Tshimanga which is substantially similar to any one of the Chanel Registered Marks constitutes an independent act of infringement for which damages may be assessed. *Abercrombie & Fitch Co. v. Moose Creek, Inc.,* 2007 WL 1469667, *2 (9th Cir. 2007) ("the core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products.")   Moreover, consumer confusion is heightened in cases in such as this where Defendant's infringing goods are of the same type as Chanel's genuine goods sold under the Chanel Marks. *See Nova Wines, Inc. v. Adler Fells Winery, LLC*, 467 F.Supp.2d 965, 980 (N.D. Cal. 2006).

Chanel respectfully submits the Court is entitled in its discretion to lower its per mark award as it sees fit to assure justice.   However, Chanel contends it would inappropriate for the Court to deem the similar marks at issue as one singular mark (e.g., the black CC MONOGRAM and the word CHANEL) since each mark is independently registered on the Principal Register of the USPTO.   Chanel has reviewed the case cited by the Court, *Louis Vuitton Malletier, S.A. v. Veit*, 211 F.Supp.2d 567, 584 (E.D. Pa. 2002).  In *Veit*, the Court awarded Louis Vuitton and Oakley, respectively, the sums of One Million Dollars and Five Hundred Thousand Dollars for six Louis

[2] The Court's Order also suggests that Reg. No. 3,025,934 is "exactly the same mark" as Reg. Nos. 1,734,822 and 1,314,511.  Chanel strongly disagrees.  Reg. No. 3,025,934 is for Chanel's Three Quarters Mark and not for the full CC MONOGRAM.  The three Quarters Mark is used only on a limited portion of Chanel's product line.

4

Vuitton and two Oakley marks counterfeited by the Defendants.    Other than stating that the awards would ensure the dual objectives of compensating the Plaintiffs and deterring the Defendants, the *Viet* Court did not elaborate on how it arrived at the individual damage awards, although the Court did deem three of the Louis Vuitton marks to be similar and based its ultimate award on only six of the nine Louis Vuitton marks asserted.    To the contrary, a number of courts have considered a similar factual scenario and based damage awards on a per registration basis without regard to the similarity of the marks. *See e.g.*, *Chanel, Inc. v. Jatinder P. Singh*, Case No. 2:05-cv-04749-CAS-PJW (C.D. Cal 2005)(summary judgment awarding $5,279,898.00); and *Chanel, Inc., et al. v. Marcos Barreto*, Case No. CV06-2768 SVW (RCx) (C.D. Cal. 2007) (summary judgment awarding $693,504.00).

Regardless of how the Court reaches its conclusion as to a statutory damage award, the only requirements of the Lanham Act are that the award be fair and just in the Court's discretion and within the statutory range of between $500.00 and $1,000,000.00 per mark, per type of goods. In this case, Chanel has proven the Defendant engaged in willful and intentional counterfeiting of the Chanel Marks at issue.    Chanel is seeking a total damage award of $678,558.18 which Chanel believes is reasonable and well within the statutory range even if the court finds Tshimanga counterfeited only two or three registered Chanel trademarks.

### 2.    Evidence of Infringement.

The Court's Order also suggests that "there does not appear to be any proof that Ms. Tshimanga infringed the trademark protected by Reg. No. 3,022,708 (i.e. the black CC MONOGRAM surrounded by a box.)." *See* Order re Supplemental Briefing and/or Evidence at Page 3, II. 12-13.    Chanel disagrees.    Specifically, Chanel refers the Court to Page 21 of Exhibit B attached hereto which reflects a counterfeit Chanel quilted flap handbag bearing Chanel's CC MONOGRAM in a box on the flap.    The photograph of the infringing handbag appears on the lower right hand corner of the page.    Moreover, Chanel submits that Tshimanga's use of any form of the CC MONOGRAM constitutes an infringement of Reg. No. 3,022,708 due to the substantial similarities between the marks.    Using the "ocular test" of direct comparison, courts have found

5

that even marks which are slightly modified from registered marks copied are considered counterfeit marks. *See Pepe (U.K.), Ltd. v. Oceanview Factory Outlet Corp.*, 21 U.S.P.Q.2d 1509 (D.P.R. 1991); *Fimab-Finanziaria Maglificio v. Helio Import/Export, Inc.*, 601 F.Supp. 1 (S.D. Fla 1983). As requested by the Court, attached hereto as Exhibit B is a chart outlining the Chanel Registrations and examples of where Chanel contends each is infringed by Tshimanga as reflected on printouts of her websites HandbagOutpost.com, DesignerOutpost.net and HandbagLuxery.com.[3]

### 3.    Defendant's Inventory Turns and Profit Margin.

As noted in Chanel's Motion, because Tshimanga did not appear in this action, Chanel did not have the opportunity to obtain discovery from her which it otherwise would have sought regarding Tshimanga's entire product inventory (including color copies of her websites), inventory flow, revenues and profits.   In the absence of such discovery, Chanel was unable to conclusively establish how often Tshimanga turned her inventory or her precise profits.   However, as noted in the Second Declaration of Adrienne Hahn Sisbarro ("Second Hahn Declaration"), attached hereto as Exhibit "C," Chanel introduces new collections of its genuine Chanel branded products six times per year, or approximately every eight weeks.   Because the counterfeiting market attempts to mirror the genuine market in so many other ways, Chanel suggests it is appropriate to estimate that Tshimanga may similarly introduce her new inventory lines on approximately an eight week cycle. *See generally Aris Isotoner, Inc. v. Dong Jin Trading Co.*, 17 U.S.P.Q.2d 1017, 1022 (S.D.N.Y. 1989) (finding where the infringer fails to provide satisfactory evidence of its actual sales volume, the court may rely on indirect or circumstantial evidence and extrapolate sales from that other evidence).

Due to the same lack of discovery referenced above, Chanel cannot state with certainty Tshimanaga's actual net profit margin earned as a result of each of her counterfeit Chanel sales.

---

[3] Copies of Chanel's Federal Registrations and the printouts of Tshimanga's websites, HandbagOutpost.com, DesignerOutpost.net and HandbagsLuxery.com, were originally attached to Chanel's Motion for Final Default Judgment (e-Docket No. 18) as Exhibits D and G through K, respectively.  The Chanel Registrations and website printouts have been individually numbered are being resubmitted herein as part of Exhibit B for easier reference.

6

Chanel's request to split the Defendant's illegal revenues at fifty (50%) was merely an attempt to be reasonable. It is Defendant's sole burden to prove any deductions from sales revenues, including the cost of goods. 15 U.S.C. § 1117(a). Absent a showing of costs, the Court may assume all sales revenues are profits. *Id.*; *see also H-D Michigan, Inc. v. Biker's Dream, Inc.,* 48 U.S.P.Q.2d 1108, 1115 (C.D. Cal. 1998) (where infringer's cost data is "incomplete and contradictory," court refuses to guess and finds that infringer failed to prove any cost deductions); *Brand v. NCC Corp.,* 540 F. Supp. 562, 565, 218 U.S.P.Q. 507, 509 (E.D. Pa. 1982) (defendant made no attempt to prove any cost deductions and "profits" were based upon gross sales revenues); *New York Racing Ass'n v. Stroup News Agency Corp.,* 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (when plaintiff proves gross sales and the infringer fails to prove cost deductions, "then the profits to which the plaintiff is entitled under the Lanham Act are equal to the infringer's gross sales").

### 4.    Plaintiff's Damage Methodology and Calculations.

Finally, as per the Court's Order, Chanel's method for calculating its suggested statutory damage award is set forth below by website:

**HandbagOutpost.com**

Tshimanga's website HandbagOutpost.com as it appeared on May 3, 2006, reveals Tshimanga was offering for sale: nine (9) handbags bearing the Chanel Marks priced between $269.00 and $429.00; one wallet priced at $109.00; and two scarves both priced at $12.99, each bearing the Chanel Marks. *See* Pgs. 12 through 19 of Exhibit B attached hereto.

A review of Defendant's same website as it appeared on October 27, 2006, reveals Tshimanga was offering for sale twenty-eight (28) handbags bearing the Chanel Marks priced between $359.00 and $499.00. *See* Pgs. 20 through 24 of Exhibit B attached hereto.

A review of Defendant's same website as it appeared on April 18, 2007 reveals Tshimanga was offering for sale twenty-eight (28) handbags bearing the Chanel Marks priced between $599.00 and $1599.00 each and eight (8) wallets bearing the Chanel Marks priced at $199.00. *See* Pgs. 25 through 29 of Exhibit B attached hereto.

Without evidence provided by Tshimanga to the contrary, Chanel submits it is reasonable to

7

infer from available evidence that during any given sales period Tshimanga may have earned as much as $15,427.00 in revenues through her sales of handbags, wallets, and scarves on the website HandbagOutpost.com[4]. Estimating Tshimanga turned her inventory only every eight weeks and conservatively allowing for a profit of only fifty percent (50%) from April 10, 2006, the date Tshimanga registered the domain name[5], until October 27, 2007, the date the Defendant was served[6], Tshimanga may have earned at least $77,135.00[7] in profits through the sale of counterfeit Chanel branded goods via the website HandbagOutpost.com.

**DesignerOutpost.net**

Tshimanga's website, DesignerOutpost.net as it appeared on July 11, 2006, reveals Tshimanga was offering for sale twenty-one (21) handbags bearing the Chanel Marks priced between $399.00 and $499.00. *See* Pgs. 31 through 43 of Exhibit "B" attached hereto.

Without evidence provided by Tshimanga to the contrary, Chanel submits it is reasonable to infer from available evidence that during any given sales period Tshimanga may have earned as much as $9,279.00 in revenues through her sales of handbags on the website DesignerOutpost.net.[8] Estimating Tshimanga turned her inventory only every eight weeks and conservatively allowing for a profit of only fifty percent (50%) from June 1, 2006, the date Tshimanga registered the domain name[9], until October 27, 2007, the date Defendant was served[10], Tshimanga may have earned at

---

[4] This figure was calculated assuming Tshimanga sold her entire inventory offered for sale on the three dates for which there was evidence available, May 3, 2006, October 27, 2006, and April 18, 2007, and dividing the total by three to reach an average.

[5] *See* Holmes Decl. ¶ 4 and Exhibit 1 attached thereto.

[6] *See* Docket Number 7.

[7] The average possible amount of Tshimanga's daily sales ($15,427.00) was reduced by 50% to account for Defendant's possible costs, and then multiplied by the number of weeks (80) between the date Defendant registered the domain name HandbagOutpost.com to the date Defendant was served with the Summons and Complaint. This figure ($617,080.00) was further reduced by the estimation that Tshimanga only turned her inventory every eight (8) weeks to reach the amount of $77,135.00.

[8] This figure was calculated assuming Tshimanga sold her entire inventory offered for sale on the one date for which there was evidence available, July 11, 2006.

[9] *See* Holmes Decl. ¶ 9 and Exhibit 3 attached thereto

[10] *See* Docket Number 7.

8

least $42,335.44 in profits through the sale of counterfeit Chanel branded goods via the website

DesignerOutpost.net.[11]

**HandsbagsLuxery.com**

Tshimanga's website, HandsbagsLuxery.com as it appeared on January 9, 2007 reveals Tshimanga was offering for sale fifty-nine (59) handbags bearing the Chanel Marks priced between $599.00 and $899.00.  *See* Pgs. 45 through 50 of Exhibit B attached hereto.

Without evidence provided by Tshimanga to the contrary, Chanel submits it is reasonable to infer from available evidence that during any given sales period Tshimanga may have earned as much as $37,986.00 in revenues through her sales of handbags on the website HandsbagsLuxery.com.[12]  Estimating Tshimanga turned her inventory only every eight weeks and conservatively allowing for a profit of only fifty percent (50%) from December 10, 2006, the date the domain name was registered[13], until October 27, 2007, the date Defendant was served[14], Tshimanga may have earned at least $106,835.62 in profits through the sale of counterfeit Chanel branded goods via the website HandsbagsLuxery.com.[15]

If the Court were awarding actual damages pursuant to 15 U.S.C. § 1117(a), Tshimanga's profits would be an appropriate measure.  Moreover, any such award of profits pursuant to §

---

[11] The possible amount of Tshimanga's daily sales ($9,279.00) was reduced by 50% to account for Defendant's possible costs, and then multiplied by the number of weeks (73) between the date Defendant registered the domain name DesignerOutpost.net to the date Defendant was served with the Summons and Complaint.  This figure ($338,683.50) was further reduced by the conservative estimation that Tshimanga only turned her inventory every eight (8) weeks to reach the amount of $42,335.44.

[12] This figure was calculated assuming Tshimanga sold her entire inventory offered for sale on the one date for which there was evidence available, January 9, 2007.

[13] *See* Holmes Decl. ¶ 11 and Exhibit 4 attached thereto.

[14] *See* Docket Number 7.

[15] The possible amount of Tshimanga's daily sales ($37,986.00) was reduced by 50% to account for Defendant's possible costs, and then multiplied by the number of weeks (45) between the date domain name HandbagsLuxery.com was registered to the date Defendant was served with the Summons and Complaint.  This figure ($854,685.00) was further reduced by the conservative estimation that Tshimanga only turned her inventory every eight (8) weeks to reach the amount of $106,835.62.

1117(a) would be subject to mandatory trebling pursuant to § 1117(b) since Tshimanga's conduct was intentional. Hence, a rough estimate of an actual trebled damage award is approximately $678,918.18. The total requested award is arrived at by adding together the profit estimates for each website outlined above and trebling the result. Chanel submits that $678,918.18 would constitute a reasonable statutory damage award pursuant to § 1117(c).

### III.    CONCLUSION

In view of the foregoing, Chanel respectfully requests the Court grant Chanel's Motion For Final Default Judgment and enter an award against the Defendant consistent with Chanel's requested award or in an other amount the Court deems reasonable pursuant to 15 U.S.C. §1117(c).

Dated:  April 17, 2008        KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP


By:_____/s/_____
                    Kenneth Keller
                    Attorneys for Plaintiff
                    CHANEL, INC.

10